**UNITED STATES of America,**
**Appellee,**

v.

**Humberto FLORES, Appellant.**

**No. 1077, Docket 74–1186.**

United States Court of Appeals,
Second Circuit.

Argued May 15, 1974.

Decided Aug. 7, 1974.

William Epstein, New York City (William J. Gallagher, The Legal Aid Society, New York City), for appellant.

Steven Kimelman, Asst. U. S. Atty. (Edward John Boyd, V, Acting U. S. Atty., for the E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and HAYS and OAKES, Circuit Judges.

PER CURIAM:

On February 8, 1974, appellant was convicted of importing 2.2 kilograms of cocaine and of conspiracy to do the same in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963. He appeals from that conviction on the basis that the district court improperly refused to dismiss his indictment pursuant to Rule 4 of the Plan for the United States District Court for the Eastern District of New York for Achieving Prompt Disposition

of Criminal Cases (Plan).[1] For the reasons which follow, we remand for further proceedings consistent with this opinion.

Most important to this case, and others of its ilk, is the chronology of events. On September 28, 1972, one Raimundo Canas was arrested upon arriving at Kennedy Airport from Chile in the possession of over two kilograms of cocaine. Informing the agents that he was to deliver the cocaine to his "contact" in the airport, he was allowed to enter the lobby. There appellant, who was with a companion, appeared to recognize Canas, but then spotted the surveilling agents and attempted to leave. He and his companion were arrested. On September 29 the three were arraigned, and appellant, who was unable to make the $150,000 bail, was held over. October 10 was set as the date of the preliminary hearing. Prior to October 10 it was determined by the office of the United States Attorney for the Eastern District of New York that, due to Canas' refusal to testify against appellant, there was insufficient evidence to indict him at that time. On October 10, in light of this, the office agreed to a reduction of appellant's bail to a $20,000 personal recognizance bond, which allowed appellant to get back on the street. Between this time and sometime in January, 1973, one agent was involved in making credit checks, telephone checks, and other investigative efforts in appellant's case, but it was not until January, over three months from the initial and only interview of Canas, that the agent again contacted him. Recently sentenced to

eight years for his part in the conspiracy, Canas still refused to cooperate. Finally, on February 23, 1973, four months and 27 days after appellant's arrest, four months and 14 days after the office of the United States Attorney had determined there was insufficient evidence with which to go to the grand jury, and over a month after the last attempt to get Canas' cooperation, the United States Attorney had the complaint dismissed.

The "investigation," however, did not end. In April the agent talked again twice to Canas. By May 4, 1973, Canas' cooperation was such that the Assistant United States Attorney handling the case wrote to Canas' sentencing judge in support of Canas' motion for a reduction of sentence, "[i]n light of the fact that Mr. Canas has recently cooperated with the United States . . . . " It was not until June 19, however, that Canas actually appeared before the grand jury and an indictment against appellant was returned. A bench warrant was issued for appellant's arrest, which was executed on June 28, 1973. While the Government claims it was ready to try appellant on three days' notice thereafter, it did not get around to filing its Notice of Readiness until July 25, 1973—which is the crucial date. *See* United States v. Pierro, 478 F.2d 386 (2d Cir. 1973).

■ Rule 4 of the Plan provides that the Government must be ready for trial six months "from the date of arrest, service of summons, detention or the filing of a complaint or a formal charge . . ., whichever is earliest." *See*

---

I. 4. *All Cases: Trial Readiness and Effect of Non-Compliance.*

In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment.

Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days.

note 1 *supra*. Here appellant was first arrested for this crime on September 28, 1972, but the Government did not file a Notice of Readiness until July 25, 1973—almost ten months later. It was thus incumbent upon the Government to demonstrate that one of the tolling periods provided in Rule 5 of the Plan [2] was applicable.[3]

2. 5. *Excluded Periods.*

In computing the time within which the government should be ready for trial under Rules 3 and 4, the following periods should be excluded:

(a) The period of delay while proceedings concerning the defendant are pending, including but not limited to proceedings for the determination of competency and the period during which he is incompetent to stand trial, pre-trial motions, interlocutory appeals, trial of other charges, and the period during which such matters are sub judice.

(b) Periods of delay resulting from a continuance granted by the District Court at the request of, or with the consent of, the defendant or his counsel, in writing or stated upon the record. The District Court shall grant such a continuance only if it is satisfied that postponement is in the interest of justice, taking into account the public interest in the prompt disposition of criminal charges. A defendant without counsel should not be deemed to have consented to a continuance unless he has been advised by the court of his rights under these rules and the effect of his consent.

(c) The period of time during which:

(i) evidence material to the government's case is unavailable, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available within a reasonable period; or

(ii) the prosecuting attorney is actively preparing the government's case for trial and additional time is justified by exceptional circumstances of the case.

(d) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his location is unknown. A defendant should be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence.

(e) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other

The Government contends, and we accept, that for the period after the dismissal of the complaint against appellant and prior to appellant's indictment the clock should not run against it. During this period appellant was not subject to any of the disabilities associated with being under arrest, the subject of a complaint or indictment, or in

cases the defendant should be granted a severance so that he may be tried within the time limits applicable to his case.

(f) The period of delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial.

(g) The period during which the defendant is without counsel for reasons other than the failure of the court to provide counsel for an indigent defendant or the insistence of the defendant on proceeding without counsel.

(h) Other period of delay occasioned by exceptional circumstances.

3. The district court instead found that for purposes of Rule 4 of the Plan appellant's six-month period began with his indictment on June 19, 1973, and that the entire period before was expunged because of the dismissal of the original complaint. This cannot be. In Hilbert v. Dooling, 476 F.2d 355 (2d Cir. 1973) (en banc), this court decided with reference to its Rules, forerunners to those here, that a dismissal for failure to abide by the Rules was with prejudice. This decision was but a reflection of the understanding that the Rules would stand for nothing if a dismissal for failure to comply with them would merely lead to reindictment. A similar situation is present here. If merely dismissing a complaint or indictment would expunge the time utilized before the dismissal in the determination of the six-month limit, the Plan would provide no incentive to increased efficiency and attention to delayed cases. Instead, as a case approached the six-month period it could be merely dismissed and then reopened. This would not only result in precisely the delays which the Plan attempts to end, but would also provide an incentive for devious behavior by Assistant United States Attorneys pressed with heavy case loads and an institutional disfavor with having cases dismissed. Accordingly, the six-month period runs under the Plan, as its words indicate, "from the date of arrest, service of summons, detention or the filing of a complaint or of a formal charge . . . whichever is earliest."

the midst of a criminal prosecution. He was under no more jeopardy than any other citizen, and the fact that he might have been under investigation has no more effect after the dismissal on the running of the six-month period than it would have had before his arrest, that is, none. Even after elimination of this period from February 24, 1973, to June 18, 1973, after the dismissal but before the indictment, however, the Government is still faced with a period adding up to over six months during which it was not ready for trial.

■ The Government claims that because Canas refused to cooperate during a several month period, this time should be tolled according to Rule 5(c)(i), *see* note 2 *supra*, which provides for tolling during the period "evidence material to the government's case is unavailable . . . ." We do not believe that the "unavailability" of evidence referred to applies to the present situation and thus this exemption is not applicable. In United States v. Rollins, 487 F.2d 409 (2d Cir. 1973), we disapproved a district court's finding that a witness was unavailable because the Government could not produce him without prejudicing an ongoing investigation. In reaffirming the application of the common sense meaning of the term "unavailable," we analogized whether the witness would be considered "available" for purposes of drawing negative inferences. *Id.* at 412. *See generally* Wigmore, Evidence §§ 1401–18 (3d ed. 1940). Here, as in *Rollins*, we feel certain Canas was "available" in this sense. In short, Canas was not "unavailable" to the Government; rather, he was simply not willing to tell the grand jury what the Government wanted him to tell. If a witness's unwillingness to testify in and of itself

were a ground for tolling the six-month period of the Plan, the Plan would be a dead letter.

■ The Government also suggests that Canas' refusal to cooperate somehow constitutes "exceptional circumstances" under Rule 5(h) of the Plan. The Government points to nothing exceptional about a convicted drug dealer refusing to cooperate with Government prosecutors, however, so that on these facts the claim is frivolous.

■ We are left then with an argument not made before us, namely that during the period June 19 to June 28, appellant may have been a fugitive whose absence or unavailability in a recognizable sense resulted in a delay which would toll the period pursuant to Rule 5(d). *See* note 2 *supra*. The record before us is not clear whether appellant was indeed absent (that is, according to the rule, whether his location was unknown) or unavailable (that is, his location was known but his presence could not be obtained by due diligence) so as to be a fugitive. It is, moreover, even less clear whether the nine day period between appellant's indictment and second arrest resulted in any delay to the Government in the time it should have been "ready for trial." If indeed appellant were absent or unavailable during that period, and if indeed the Government's readiness to go to trial was delayed *thereby*, then that nine day period would be exempted from the period within which the Government had to be ready, putting the total period at *just* under six months. If, however, these conditions are not met, then the district court should dismiss the indictment against appellant with prejudice.[4]

Reversed and remanded.

4. Although the burden of proof is on the Government to establish those times to be excluded from the six-month period, and failure so to prove in the first instance should be determinative, we remand for further hearings because the Plan was not established primarily to safeguard defendants' rights. Rather the Plan, and the Second Circuit Rules before it, were to serve the public interest in the prompt adjudication of criminal cases. Thus, because it is not the defendant's personal interest being defended by the Plan, but rather the public's, whose interest is both in convicting criminals and in upholding the Plan, we feel it is not improper to give the Government a second opportunity to establish its compliance with the Plan.